# DEMBO, BROWN & BURNS LLP
ATTORNEYS AT LAW

| | 1300 ROUTE 73<br>SUITE 205<br>MOUNT LAUREL, NEW JERSEY 08054 | |
|---|---|---|
| Leon D. Dembo*<br>James W. Burns*<br>Michael E. Brown*<br>Kyle F. Eingorn*<br>—<br>*Member NJ & PA Bar | May 29, 2025 | Telephone:<br>856-354-8866 Ext 336<br>Direct Fax:<br>856-354-0971<br>E-Mail<br>KEingorn@dbblegal.com |

**via ELECTRONIC FILING**

The Honorable Mark E. Hall, U.S.B.J.
402 East State Street
Trenton, N.J. 08608
Courtroom 2

    **In Re: Vivek Pandit**
        **Case No.: 24-16276-MEH**
        **Our File No. 15456**
        **Objection to Amended Disclosure Statement**
        **Hearing Date: June 5, 2025 at 2:00 pm**

Dear Judge Hall:

    This firm represents creditor, McCormick 103, LLC ("McCormick") in the above referenced matter. Kindly accept this letter objection to the Amended Disclosure Statement [Doc 50] filed by the Debtor, Vivek Pandit (the "Debtor"). As the Court will recall, on or about January 20, 2025, McCormick filed its Objection to Disclosure Statement and Plan [Doc 44]. For the sake of brevity, such is incorporated herein by reference. McCormick further objects as set forth below.

    The Amended Disclosure Statement only further demonstrates the insincerity of the Debtor's bankruptcy filing. Once again, following the filing of the initial Disclosure Statement (which was filed in January 2025) and McCormick's objection thereto, the Debtor continues his silence (as opposed to disclosure) regarding his alleged consulting work, and his sources of business from such work. His silence in the face of McCormick's prior objections demonstrate

what is the worst kept secret in this matter, i.e., the Debtor continues to operate Indian Foods and Spices under a different corporate entity owned by his spouse, Anita Pandit.

To that end, following the objection of McCormick, wherein McCormick questioned whether the Debtor's consulting job was a ruse to hide his actual work with GMS (the successor to Indian Foods and Spices), the Debtor has since proposed multiple different employments. The Debtor's Schedule I [Doc 1 at p. 4] stated that the Debtor was employed by BP Nanek Imports, Inc. making $3,500.00 per month (his monthly operating reports failed to report any income from this employment). Debtor's original disclosure statement stated that he began work in February 2025 (though no employer was identified) and stated that he would be making $2,500.00 per month [Doc 39-3]. Now, only after McCormick objected, the Debtor alleges he will be consulting for 2 companies making $3,500.00 per month, the same amount as originally stated in Schedule I. No documentation has been attached to the Amended Disclosure Statement to support the alleged consulting agreements with either Sankaj, LLC or Krusti Promotions and Events, LLC. Without any evidence to support the Debtor's allegations and based upon his constant changes, McCormick questions the veracity of his allegations. As such, the Debtor's Amended Disclosure Statement fails to meet the requirements of 11 U.S.C. §1125(b).

Moreover, without any proof of employment, without any proof of income, and in light of the ever-changing allegations regarding his consulting/employment, the Debtor's allegations of earning $3,500.00 per month are pure speculation, which do not meet the Court's disclosure requirements. As the Court is aware, the Debtor's "income projections must be based on concrete evidence of financial progress and must not be speculative, conjectural or unrealistic." In re Sound Radio, Inc., 103 B.R. 521, 524 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir.1990). Furthermore, as it relates to the feasibility of plans proposed by unemployed debtors, it has been discussed that:

> When a plan is to be funded from future income, a chapter 13 debtor meets his/her burden of demonstrating the viability of a chapter 13 plan by showing a stable employment history, present employment, and a current income level sufficient to make proposed plan payments. *See, e.g.,* In re Nottingham, 228 B.R. 316, 321 (Bankr.M.D.Fla.1998). A few courts, however, have found a chapter 13 plan feasible when the debtor is presently unemployed but has demonstrated a sufficient likelihood of re-employment. *See, e.g.,* In re Compton, 88 B.R. 166, 167 (Bankr.S.D.Ohio 1988); In re Van Gordon, 69 B.R. 545, 547 (Bankr.D.Mont.1987) (the plan was found feasible because "the evidence of the Debtor is that his employment prospects after termination of his present job are good, and will provide him with the same level of income he has received in the past"). *Compare* In re Anderson, 21 B.R. 443, 446 (Bankr.N.D.Ga.1981) (unemployed debtor was unable to show he could supply regular and stable income).

In re Soppick, 516 B.R. 733, 749 (Bankr. E.D. Pa. 2014).[1] Here, the Debtor is seemingly unemployed and has failed to demonstrate any sufficient likelihood of re-employment, as he has continually changed his alleged employment and failed to produce any evidence of employment and/or income. Accordingly, without "concrete evidence of financial progress", the Debtor's Amended Disclosure Statement cannot be approved.

The Debtor's lack of sincerity is further evidenced by the fact he now proposes to shift the payment of the Flagstar Mortgage (which secures a residence that is not property of the estate and for which the Debtor does not reside) to the Debtor's spouse. Therefore, not only is the Debtor proposing to fund his Plan through spousal contributions, but he is now also proposing that his spouse will pay his parent's mortgage expenses to Flagstar. Since the Debtor is proposing to use the household income to fund the Plan, shifting the obligation to pay Flagstar onto his spouse is of no consequence and is effectively the same. As such, the Debtor's proposal to pay an unsecured creditor out of the order of priority violates the Bankruptcy Code.

---

[1] While this matter is not specifically a Chapter 13, it is analogous, as the Debtor is an individual in a subchapter V chapter 11, seeking to support his plan through future income.

Notably, despite McCormick's objection[2], no information has been provided to substantiate the Debtor's spouse's ability to contribute to the Plan. To that end, the Court has been skeptical of Plans that rely upon non-debtor contributions. As discussed in In re Buccolo, 397 B.R. 527, 542 (Bankr. D.N.J. 2008), aff'd, No. CIV.A.09-314 FLW, 2009 WL 2132435 (D.N.J. July 13, 2009):

> **Courts have been skeptical of plans that rely on the income of a non-debtor to succeed**. In re Olp, B.R. 932, 936-937 (Bankr.D.Wis. 1983)(finding that plan was not feasible where it depended on a spouse's income who was not a party to the bankruptcy and this not bound by the plan (citing In re Avins, 19 B.R. 736, 737 (Bankr.S.D.Fla.1982))). This is true even in cases where the non-debtor is a spouse that otherwise pools income with the Debtor.

Here, not only does the Plan rely upon non-debtor contributions, it does so without any information for the Court to make a determination as to the non-debtor's ability to make those payments. When considering that the Debtor and his spouse have played fast and loose with creditors outside of the bankruptcy court, it begs the question, why should they be permitted to hide this information inside the bankruptcy where disclosure is required. As such, the amended disclosure statement does not contain the material information necessary to demonstrate the feasibility of the Plan.

Accordingly, McCormick respectfully submits that the Amended Disclosure Statement cannot be approved in its current form.

Respectfully submitted,<br>
DEMBO, BROWN & BURNS LLP<br>
<br>
Kyle F. Eingorn

KFE
Cc:   Marc Capone, Esquire (via CM/ECF)
      Lauren Bielskie, Esquire (via CM/ECF)
      Client (via email)

---

[2] See Doc 44 at p. 9.