# DEMBO, BROWN & BURNS LLP
### ATTORNEYS AT LAW

Leon D. Dembo*
James W. Burns*
Michael E. Brown*
Kyle F. Eingorn*
—
*Member NJ & PA Bar

1300 ROUTE 73
SUITE 205
MOUNT LAUREL, NEW JERSEY 08054

September 24, 2025

Telephone:
856-354-8866 Ext 336

Direct Fax:
856-354-0971

E-Mail
KEingorn@dbblegal.com

### via ELECTRONIC FILING

The Honorable Mark E. Hall, U.S.B.J.
United States Bankruptcy Court
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, N.J. 08608

> **In Re: Vivek Pandit**
> **Case No.: 24-16276-MEH**
> **Our File No. 15456**
> **Objection to Third Amended Disclosure Statement**
> **Hearing Date: October 2, 2025 at 2:00 pm**

Dear Judge Hall:

This firm represents creditor, McCormick 103, LLC ("McCormick") in the above referenced matter. Kindly accept this letter objection to the Third Amended Disclosure Statement [Doc 59] filed by the Debtor, Vivek Pandit (the "Debtor").

The Third Amended Disclosure Statement again demonstrates the insincerity of the Debtor's bankruptcy filing. Once again, following the filing of the initial Disclosure Statement [Doc 39], the Amended Disclosure Statement [Doc 50], the Second Amended Disclosure Statement [Doc 56] and McCormick's objections thereto, the Debtor still cannot present to this Court an approvable disclosure statement that meets the requirements of the Bankruptcy Code. His multiple inconsistencies in the face of McCormick's prior objections demonstrate what is the worst kept secret in this matter, i.e., the Debtor continues to operate Indian Foods and Spices under a different corporate entity owned by his spouse, Anita Pandit.

To that end, following the objection of McCormick, wherein McCormick questioned whether the Debtor's consulting job was a ruse to hide his actual work with GMS (the successor to Indian Foods and Spices), the Debtor has since proposed multiple different consulting positions. The Debtor's Schedule I [Doc 1 at p. 4] stated that the Debtor was employed by BP Nanek Imports, Inc. making $3,500.00 per month (his monthly operating reports failed to report any income from this employment). As previously outlined, the Debtor's original disclosure statement stated that he began work in February 2025 (though no employer was identified) and stated that he would be making $2,500.00 per month [Doc 39-3]. Now, after McCormick objected, the Debtor again alleges he will be consulting for 2 companies making $3,500.00 per month; conveniently, the same amount as originally stated in Schedule I. Still no documentation has been attached to the Third Amended Disclosure Statement[1] to support the alleged consulting agreements with either Sankaj, LLC or Krusti Promotions and Events, LLC, even following this same objection having been made previously. Without any evidence to support the Debtor's allegations, McCormick questions the Debtor's veracity. Furthermore, the checks attached to the Third Amended Disclosure Statement [Doc 59-4] are from three (3) separate sources (as opposed to two (2)), none of which are Krusti Promotions and Events, LLC and two (2) of which are not contemplated in the Third Amended Disclosure Statement. As such, the Debtor's Third Amended Disclosure Statement fails to meet the requirements of 11 U.S.C. §1125(b).

Moreover, without proof of employment, without any proof of consistent income, and in light of the ever-changing allegations regarding his consulting/employment, the Debtor's allegations of earning $3,500.00 per month are pure speculation, which do not meet the Court's disclosure requirements. As the Court is aware, the Debtor's "income projections must be based on concrete evidence of financial progress and must not be speculative, conjectural or unrealistic." In re Sound Radio, Inc., 103 B.R. 521, 524 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d

---

[1] It was not attached to the Amended Disclosure Statement either.

Cir.1990). Furthermore, as it relates to the feasibility of plans proposed by unemployed debtors, it has been discussed that:

> When a plan is to be funded from future income, a chapter 13 debtor meets his/her burden of demonstrating the viability of a chapter 13 plan by showing a stable employment history, present employment, and a current income level sufficient to make proposed plan payments. *See, e.g.,* In re Nottingham, 228 B.R. 316, 321 (Bankr.M.D.Fla.1998). A few courts, however, have found a chapter 13 plan feasible when the debtor is presently unemployed but has demonstrated a sufficient likelihood of re-employment. *See, e.g.,* In re Compton, 88 B.R. 166, 167 (Bankr.S.D.Ohio 1988); In re Van Gordon, 69 B.R. 545, 547 (Bankr.D.Mont.1987) (the plan was found feasible because "the evidence of the Debtor is that his employment prospects after termination of his present job are good, and will provide him with the same level of income he has received in the past"). *Compare* In re Anderson, 21 B.R. 443, 446 (Bankr.N.D.Ga.1981) (unemployed debtor was unable to show he could supply regular and stable income).

In re Soppick, 516 B.R. 733, 749 (Bankr. E.D. Pa. 2014).[2] Here, the Debtor is seemingly unemployed and has failed to demonstrate any sufficient likelihood of re-employment, as he has continually changed his alleged employment and failed to produce any evidence of employment and/or consistent income. Accordingly, without "concrete evidence of financial progress", the Debtor's Third Amended Disclosure Statement cannot be approved.

Notably, despite McCormick's objections[3], the information provided is insufficient to substantiate the Debtor's spouse's ability to contribute to the Plan. To that end, the Court has been skeptical of Plans that rely upon non-debtor contributions. As discussed in In re Buccolo, 397 B.R. 527, 542 (Bankr. D.N.J. 2008), aff'd, No. CIV.A.09-314 FLW, 2009 WL 2132435 (D.N.J. July 13, 2009):

---

[2] While this matter is not specifically a Chapter 13, it is analogous, as the Debtor is an individual in a subchapter V chapter 11, seeking to support his plan through future income.
[3] See Doc 44 at p. 9.

**<u>Courts have been skeptical of plans that rely on the income of a non-debtor to succeed</u>**. <u>In re Olp</u>, B.R. 932, 936-937 (Bankr.D.Wis. 1983)(finding that plan was not feasible where it depended on a spouse's income who was not a party to the bankruptcy and this not bound by the plan (citing <u>In re Avins</u>, 19 B.R. 736, 737 (Bankr.S.D.Fla.1982))). This is true even in cases where the non-debtor is a spouse that otherwise pools income with the Debtor.

To that end, attached to the Third Amended Disclosure Statement are the pay stubs of the non-debtor spouse [Doc 59-5]. As set forth therein, she is taking home approximately $1,180.00 per week or $4,720.00 per month (about $5,500.00 gross). Despite these paystubs, the Debtor submits projections [Doc 59-3] where the non-debtor spouse alleges $7,494.00 per month in income. In her Schedule I filed in her since-dismissed Chapter 13 [Doc 8 to case 25-15896], she reported $6,000.02 per month in gross income (with a possibility of an additional $2,750 per month based upon "anticipated future income form growth of business"). Clearly, the non-debtor spouse lacks the income to support the Plan. Nothing the Debtor has "disclosed" in any of his disclosure statements has been consistent with the facts and/or evidence supplied. Here, not only does the Plan rely upon non-debtor contributions, it does so without sufficient information for the Court to make a determination as to the non-debtor's ability to make those payments. In fact, the evidence provided suggests that the Plan is unconfirmable.

Again, the Debtor's lack of sincerity is further evidenced by the fact he is proposing to shift the payment of the Flagstar Mortgage (which secures a residence that is not property of the estate and for which the Debtor does not reside) to the Debtor's spouse. Therefore, not only is the Debtor proposing to fund his Plan through spousal contributions, but he is now also proposing that his spouse will pay his parent's mortgage expenses to Flagstar. Since the Debtor is proposing to use the household income to fund the Plan, shifting the obligation to pay Flagstar onto his spouse is effectively the same proposal as before. As such, the Debtor's proposal to pay an unsecured creditor out of the order of priority violates the Bankruptcy Code.

When considering that the Debtor and his spouse have played fast and loose with creditors outside of the bankruptcy court, it begs the question, why should they be permitted to hide information inside the bankruptcy where disclosure is required and to improperly gerrymander unsecured claims. As such, the amended disclosure statement does not contain the material information necessary to demonstrate the feasibility of the Plan.

Accordingly, McCormick respectfully submits that the Third Amended Disclosure Statement cannot be approved in its current form.

Respectfully submitted,
DEMBO, BROWN & BURNS LLP

Kyle F. Eingorn

KFE
Cc: Marc Capone, Esquire (via CM/ECF)
Lauren Bielskie, Esquire (via CM/ECF)
Client (via email)